☐ ORIGINAL

UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF GEORGIA

FILED IN CLERK'S OFFICE
U S D C  Atlanta

JUL 16 2007

JAMES N. HATTEN, Clerk
By. _____ Deputy Clerk

TCB

1:07-CV-1638

| | |
|---|---|
| RICKY THOMAS<br>1124 REGENT STREET, SW<br>ATLANTA, GA 30310 | ) |
| HASSAN ABDULLAH<br>12245 MOLYSUE HASSAN<br>FAYETTVILLE, GA 30215 | ) |
| RONNIE BELT<br>6539 HILLANDALE DRIVE<br>APT B<br>NORCROSS, GA 30092 | ) |
| TERRELL BROWN<br>4229 WINDWARD LANE<br>NORCROSS, GA 30093 | ) |
| JUAN BUSSEY<br>94 RANDOLPH STREET<br>ATLANTA, GA 30312 | ) |
| DEMETRIUS CHAMBERS<br>3305 AMBER TRAIL<br>DELUTH, GA 30096 | ) |
| TIMOTHY CLAWSON<br>1308 EVANS AVENUE<br>NOBLESVILLE, IN 46060 | ) |
| DENNIS COOKE V<br>20 SHIRLEY DRIVE<br>CINCINNATI, OH 45217 | ) |
| MICHAEL COTE<br>150 ELAINE DRIVE<br>ROSWELL, GA 30075 | ) |
| ROLAND DICKERSON<br>425 ARRAHATCHEE DRIVE<br>WINDER, GA 30680 | ) |

DANNY ELLERBEE                          )
1730 VINEYARD WAY                       )
GAINESVILLE, GA  30504                  )
                                        )
                                        )
MATTHEW FIELDS                          )
2004 HIGHLAND CIRCLE                    )
ROME, GA  30161                         )
                                        )
TRACY GORDINO                           )
2701 DELK ROAD                          )
APT A                                   )
MARIETTA, GA  30067                     )
                                        )
KELTON GRESHAM JR.                      )
2462 HALCYON WAY                        )
LAWRENCEVILLE, GA  30044                )
                                        )
KEN HERRING                             )
3906 14TH AVENUE             )
COLONIAL, GA  31904                     )
                                        )
ANDRE HUMPHREY                          )
8469 CEDAR CREEK RIDGE                  )
RIVERDALE, GA  30274                    )
                                        )
HENRY JACKSON                           )
104 REGIS ROAD                          )
ATLANTA, GA  30315                      )
                                        )
RUFUS JONES                             )
1267 GAULT STREET                       )
APT 113                                 )
ATLANTA, GA  30315                      )
                                        )
GARY JONES                              )
1011 LAWTON STREET                      )
ATLANTA, GA  30310                      )
                                        )
JOSEPH JONES JR                         )
2306 NICKEY LAKE ROAD SW                )
ATLANTA, GA  30331                      )
                                        )
FREDRICK KEITH                          )
202 RESERVATION STREET                  )
ROME, GA  30161                         )

| | |
|---|---|
| DARNEL MANLEY<br>1807 OGEECHEE ROAD<br>APT A3<br>SAVANNAH, GA  31405 | )<br>)<br>)<br>)<br>)<br>) |
| WILL MAY<br>2337 ROCKSRAM COURT<br>BUFORD, GA  30519 | )<br>)<br>)<br>) |
| RICK MILLAN<br>6787 FOXFIRE PLACE<br>COLLEGE PARK, GA 30349 | )<br>)<br>)<br>) |
| TERRANCE MITCHELL<br>114 BELL STREET<br>LAGRANGE, GA  30241 | )<br>)<br>)<br>) |
| KENNETH MORGAN<br>P.O. BOX 500561<br>ATLANTA, GA  31150 | )<br>)<br>)<br>) |
| RICHARD OWENS<br>1023 N. HAIRSTON ROAD<br>#J-2<br>STONE MOUNTAIN, GA  30083 | )<br>)<br>)<br>)<br>) |
| LARRY PARKS<br>1289 ELVA DRIVE<br>ATLANTA, GA  30331 | )<br>)<br>)<br>) |
| EUGENE PEREIRA<br>6060 APRIL DRIVE<br>SUGARHILL, GA  30518 | )<br>)<br>)<br>) |
| PHILIP PHILANDER<br>5626 CRESTWOOD DRIVE<br>STONE MOUNTAIN, GA 30087 | )<br>)<br>)<br>) |
| KENNETH RANN<br>165 CRATON ROAD<br>SILVER CREEK, GA 30173 | )<br>)<br>)<br>) |
| JERRY SCOTT<br>1602 STAYMAN PLACE<br>AUGUSTA, GA  30906 | )<br>)<br>) |

JON SFINTU  )
864 CHATTIN DRIVE  )
CANTON, GA 30115  )
  )
PAUL SMITH  )
2921 A RAES CREEK ROAD  )
AUGUSTA, GA 30909  )
  )
TOMMIE STEPHENS  )
3800 FLAT SHOALS PARKWAY  )
APT 6B  )
ATLANTA, GA 30034  )
  )
LAMAR STONE  )
2600 GIBERBRANCH  )
DOUGLASSVILLE, GA 30135  )
  )
CURTIS STURDIVANT  )
4304 THE VALLEY NE  )
ATLANTA, GA 30328  )
  )
TROY THOMAS  )
1665 CHRISTIAN CIRCLE SE  )
CONYERS, GA 30013  )
  )
LLADNAR THOMPSON  )
328 WEST MINISTER DRIVE  )
CANTON, GA 30114  )
  )
MARK UHL  )
124 WAKE FOREST DRIVE  )
WARNER ROBINS, GA 31093  )
  )
ARTHUR WALKER  )
3072 CHAPARRAL PLACE  )
LITHONIA, GA 30038  )
  )
HAROLD WESTON  )
1921 BREWER BOULEVARD  )
ATLANTA, GA 30310  )
  )
MARK WILLIAMS  )
1 RON STREET  )
KINGSTON, GA 30145  )
  )

4

| | |
|---|---|
| WENDALL WOOD<br>3806 AVERA ROAD<br>ROBERTA, GA 31078<br><br>                Plaintiffs,<br>v.<br><br>APARTMENT INVESTMENT AND<br>MANAGEMENT COMPANY, AIMCO<br>PROPERTIES, L.P., AND NHP<br>MANAGEMENT, INC.<br>Defendants. | Case No **1:07-CV-1638**<br>**COMPLAINT**<br><br>**JURY TRIAL DEMANDED** |

## SUMMARY OF ALLEGATIONS

1.  Defendants Apartment Investment Management Company ("The Company"), AIMCO Properties, L.P. ("AIMCO") and NHP Management, Inc. ("NHP") (collectively, "Defendants"), beginning in at least the year 1999 and continuing until the present, have willfully violated federal law and applicable state laws by refusing to pay Plaintiffs Hassan Abdullah, Ronnie Belt, Terrell Brown, Juan Bussey, Demetrius Chambers, Timothy Clawson, Dennis Cooke V, Michael Cote, Roland Dickerson, Danny Ellerbee, Matthew Fields, Tracy Gordino, Kelton Gresham, Jr., Ken Herring, Andre Humphrey, Henry Jackson, Rufus Jones, Gary Jones, Joseph Jones, Jr., Fredrick Keith, Darnel Manley, Will May, Rick Millan, Terrance Mitchell, Kenneth Morgan, Richard Owens, Larry Parks, Eugene Pereira, Philip Philander, Kenneth Rann, Jerry Scott, Jon Sfintu, Paul Smith, Tommie Stephens, Lamar Stone, Curtis Sturdivant, David Taylor, Troy Thomas, Lladnar Thompson, Mark Uhl, Arthur Walker, Harold Weston, Mark Williams and Wendall Wood for all of the hours they work, and by refusing to pay overtime for all hours worked over 40 per week

2.  This denial of legally required overtime pay has been accomplished through two separate practices, implemented statewide.

5

3. First, AIMCO requires that employees who work overtime take "compensatory time" on future scheduled workdays rather than be paid overtime.[1] AIMCO implemented this compensatory-time off policy while simultaneously setting staffing levels at its apartment communities at such low levels that, as a practical matter, employees are wholly unable to take off the "compensatory time" that they are owed. The predictable – and intended – result is that AIMCO's Service Technicians, Maintenance Supervisors, and Service Managers are not paid overtime compensation when they work more than forty (40) hours a week, nor do they receive their compensatory time

4. Second, AIMCO refuses to pay employees who are "on call" at its apartment communities for the time they spend waiting for calls. These employees must be available twenty-four (24) hours a day to respond to emergency requests for services from tenants, and must arrive at tenants' apartment between 5 and 20 minutes of tenants' requests for service In many cases these employees' lives are severely restricted while they are on call  Yet AIMCO does not pay its employees for this waiting time.

5. Both of these practices are knowing, willful, and intentional violations of The Fair Labor Standards Act, 29 U.S.C. §§ 207 *et seq* ("FLSA").

## JURISDICTION AND VENUE

6. This Court has subject matter jurisdiction over the claims in this case, seeking relief for violations of the FLSA, pursuant to 28 U.S.C. § 1331.

7. Defendants regularly transact business in this District and are therefore subject to personal jurisdiction here.

---

[1] AIMCO did not use "compensatory time" in the traditional sense like the federal government. "Compensatory time" in actuality was supposed to be a reorganization of an employee's work schedule so that the time worked did not exceed forty (40) hours per work week.

6

8.   Defendants own and operate approximately 21 apartment complexes in this District.

9.   Defendants also manage apartment communities and employ employees in this District and throughout the state of Georgia

10.   Upon information and belief, Defendants were joint employers of Plaintiffs in this District and throughout the state of Georgia.

11.   Venue is proper in this district pursuant to 28 U.S.C. § 1391(c), because Defendants are subject to personal jurisdiction in this District.  In addition, Plaintiffs were employed at facilities owned and operated by Defendants in this District and throughout the state of Georgia, and were employed by Defendants in this District and throughout the state of Georgia, such that the unlawful acts of which Plaintiffs complain took place in this District and throughout the state of Georgia.

## PARTIES

12   The Company is a Maryland Corporation, which has its executive offices in Denver, Colorado and is engaged in the acquisition, ownership, management and redevelopment of apartment properties.  The Company is the largest owner and operator of apartment properties in the United States.  As of December 31, 2004, the Company owned or managed approximately 1500 properties containing approximately 318,152 apartment units located in 47 states

13.   Defendant AIMCO is a Delaware limited partnership.  AIMCO, through its operating divisions and subsidiaries, holds substantially all of the company's assets and manages the daily operations of the Company's business and assets

14.   All references to AIMCO in the remainder of this Complaint shall mean the Company and AIMCO.

15. Defendant NHP is an apartment management company with its principal place of business in Denver, Colorado. NHP manages many of the communities AIMCO owns, and is a joint employer with AIMCO of many employees at AIMCO's apartment communities, including the Plaintiffs in this action.

16. Plaintiffs are current or former employees of AIMCO and NHP who are or were employed as hourly-paid "Service Technicians" or "Maintenance Supervisors" or "Service Managers," or in other job titles performing similar job duties. Plaintiffs' job responsibilities included maintaining the condition of the apartment community at which they are or were employed and responding to tenant requests for services

17. Plaintiffs are or were required periodically to remain "on call" on a 24-hour a day basis to respond to emergency requests for assistance or services from tenants.

18 Plaintiffs Hassan Abdullah, Ronnie Belt, Terrell Brown, Juan Bussey, Demetrius Chambers, Timothy Clawson, Dennis Cooke V, Michael Cote, Roland Dickerson, Danny Ellerbee, Matthew Fields, Tracy Gordino, Kelton Gresham, Jr., Ken Herring, Andre Humphrey, Henry Jackson, Rufus Jones, Gary Jones, Joseph Jones, Jr, Fredrick Keith, Darnel Manley, Will May, Rick Millan, Terrance Mitchell, Kenneth Morgan, Richard Owens, Larry Parks, Eugene Pereira, Philip Philander, Kenneth Rann, Jerry Scott, Jon Sfintu, Paul Smith, Tommie Stephens, Lamar Stone, Curtis Sturdivant, David Taylor, Troy Thomas, Lladnar Thompson, Mark Uhl, Arthur Walker, Harold Weston, Mark Williams, and Wendall Wood are or were employed by Defendants as Maintenance Personnel at facilities within the state of Georgia.

## ALLEGATIONS OF THE PLAINTIFFS

### Defendants' Failure To Pay For Time Spent Responding To Emergency Service Calls

19 Defendants jointly own, operate and manage apartment communities across the

8

United States. Indeed, AIMCO is the largest owner of apartment communities in the country, owning over 1700 properties nationwide

20. Many of AIMCO's properties are managed by Defendant NHP, and many of the employees who work at these AIMCO properties also are employees of NHP

21 AIMCO and NHP employ hourly-paid individuals at their apartment communities with the job titles Service Technician, Maintenance Supervisor, and Service Director (collectively, "Maintenance Personnel").

22. The job duties of Maintenance Personnel include, *inter alia*, maintaining the condition of their apartment communities and performing scheduled and unscheduled maintenance and repair work at their facilities. These duties include tasks such as repairing broken appliances, fixing air conditioning units, fixing plumbing problems, and performing electrical work. Maintenance Personnel also must prepare vacant apartments to be rented, and some are responsible for maintaining adequate stocks of supplies and dealing with contractors and outside workers

23. In addition to the above job duties, on a rotating basis Maintenance Personnel are required to remain "on call," defined as being accessible to respond immediately to emergency requests for services from tenants, and available to arrive at tenants' apartments within 20 minutes or less in response to such requests

24. Maintenance Personnel usually are on call for one-week periods occurring once or twice each month, during which they work between approximately 4 p.m. and 8 a.m Monday through Friday, and 24 hours a day over the weekends.

25. Defendants guarantee prompt service to their tenants who live in their communities, and rely upon their Maintenance Personnel to fulfill those guarantees.

9

26.     Specifically, Defendants' policy is that when tenants make emergency requests for service at their properties, a member of the Maintenance Personnel staff will arrive at the tenant's apartment to assist the tenant within approximately twenty (20) minutes or less of receiving the tenant's call.

27      Defendants also guarantee that, under most circumstances, tenant problems will be resolved within 24 hours of the time Defendants are notified of the problem, or the tenant will receive a discount on future rent payments. This service guarantee is prominently advertised on AIMCO's website.

28      This level of service to tenants requires a significant commitment on the part of the Maintenance Personnel working at Defendants' apartment communities

29.     In order to fulfill their guarantee of prompt service, the Defendants require that, in response to request for emergency service made by tenants, employees who are on call must arrive at the tenant's apartment to provide the requested assistance within 20 minutes or less of when the tenant's call is received.

30.     Specifically, Defendants' service policies and guarantees require that Maintenance Personnel be available twenty-four (24) hours a day on a rotating basis to respond to tenant emergency requests for service, and to work diligently at all times to ensure that tenants are satisfied with their apartment communities and that Defendants live up to their 24-hour satisfaction guarantee.

31      Beginning in the year 2000, or earlier, and continuing to the present, the Defendants have followed a policy of generally denying payment of overtime wages to its Maintenance Personnel for time spent on call at their facilities and for time spent responding to emergency service requests from tenants (the "no-overtime policy"). This policy was

documented in various electronic mail messages from Defendants' upper management to Community Managers in the field.

32. Exceptions to Defendants' no-overtime policy generally must be approved by a Regional Vice President ("RVP") or higher.

33. The RVPs generally will not approve exceptions to the no-overtime policy. Rather than approve overtime payments, Defendants state that their employees must take "compensatory time" off work at some later point to compensate for the overtime that was worked.

34. The Defendants, however, knowingly and willfully set staffing levels so low that Maintenance Personnel's heavy workloads frequently require that they work more than 40 hours in a work week.

35. These low staffing levels have been caused by several policies employed by the Defendants.

36. First, throughout the liability period, the defendants have imposed a staffing requirement that permits, at most, only one Maintenance Person to be assigned to its apartment communities for every 100 apartments at the community. This policy is enforced in such a way that, for example, if an apartment community has 280 apartments, it is still only assigned, at most, two Maintenance Persons rather than three. In addition, many AIMCO facilities are staffed more leanly, resulting in even greater pressure on the Maintenance Personnel.

37. Second, upon information and belief, beginning in approximately the year 2000, the Defendants required that each apartment community be staffed "5% out of the box" at all times. This policy meant that apartment communities would be provided with 5% less staff than was typically employed by other apartment management companies.

38. Third, in approximately 2001, the Defendants adopted an initiative called "Project Century," pursuant to which thousands of their employees were laid off, including most of the grounds keeping and housekeeping staffs.

39. Each of these staffing policies separately, as well as taken together, caused the remaining apartment community staff to be very busy at all times, and deprived them of any flexibility in the schedules in which they worked

40. Despite these diminished staffing levels and the enhanced workloads they imposed on Maintenance Personnel, the Defendants insisted that when Maintenance Personnel performed overtime work, they receive compensatory time rather than be paid overtime wages.

41. The Defendants were informed repeatedly by Community Managers and Maintenance Supervisors across the country, during both regional meetings attended by RVPs and on other occasions, that Maintenance Personnel lacked the time to use the compensatory time they earned due to large and inflexible work loads.

42. Notwithstanding repeated notice that Maintenance Personnel who performed overtime work were unable to use the compensatory time offered in lieu of overtime wages, the Defendants persisted in requiring advance approval before overtime wages were paid and directing managers to require that employees be provided compensatory time in lieu of overtime wages.

43. In addition, in an effort to conceal the amount of overtime work performed, managers employed by the Defendants have directed Maintenance Personnel to record on their time sheets less time than they actually worked, and have altered time sheets completed by Maintenance Personnel to reduce the number of hours worked that are recorded.

44. These alterations to Maintenance Personnel timesheets had the purpose and effect

of making it appear that Maintenance Personnel had not worked overtime when in fact they had done so

45. The compensation policies and practices set forth above constitute a willful, knowing, and intentional violation of the Fair Labor Standards Act.

**Defendants' Failure To Pay For Time Spent Waiting For Emergency Service Calls**

46. Defendants require that at least one member of the Maintenance Personnel staff be "on-call" during all hours when the apartment community office is closed and no Maintenance Personnel are on duty.

47. On call service usually extends from 4 p.m. until 8 a.m. Monday through Friday, and during the entire weekend.

48. When designated as the employee "on-call", Maintenance Personnel are required to be available to immediately respond to emergency service requests from tenants. As a result, while Maintenance Personnel serve on call they are typically required to carry a beeper or cellular phone at all times.

49. Tenants are provided a telephone number that they may call in order to reach the Maintenance Person serving on call at any time of the day or night. Typically tenants either call an answering service that pages the Maintenance Person on call or call directly to the pager or cellular phone carried by the Maintenance Person on call.

50. The Defendants require that, should a tenant call with an emergency (such as a leak or a lockout), then the employee on call will arrive at the tenant's apartment to address the problem within a short, fixed amount of time after the call is received. The employee on call is typically expected to be at the tenant's apartment within less than 20 minutes after the call is received.

51.  In larger apartment communities, Maintenance Personnel on call usually receive three to five emergency service requests from tenants each night, and more calls on weekends and during seasons when tenants use heating and cooling systems heavily. In some smaller apartment communities, Maintenance Personnel receive calls less frequently, but most employees still receive at least 5 to 10 emergency service calls each week during which they are on call.

52.  The time required to address tenant emergency service requests ranges in length from about 20 to 30 minutes for emergencies that can be readily addressed, such as lockouts, to eight to ten hours if the service need is onerous or requires substantial repairs, such as a major leak.

53.  As a result of the Defendants' requirement that Maintenance Personnel respond so promptly to emergency service requests while they are on call, the Maintenance Personnel are severely limited in their ability to pursue activities unrelated to their employment while they are on call. Specifically, Maintenance Personnel often cannot assist in child care, cannot attend religious services, cannot go out to dinner, cannot go to the grocery store, cannot attend movies or plays, and cannot visit their families while they are on call.

54.  While on call, Maintenance Personnel are often unable to sleep throughout the night. Many Maintenance Personnel receive less than 5 hours of sleep at night while on call.

55.  Maintenance Personnel are subject to discipline, up to and including termination, for failing to respond promptly to emergency service requests lodged while they are on call.

56.  The severe restrictions imposed on the personal lives and activities of Maintenance Personnel when they are on call mean that, while they serve on call, the Defendants effectively have engaged Maintenance Personnel to wait for emergency service calls from

tenants. Accordingly, the Defendants should have paid the Maintenance Personnel their hourly rate, or time and a half their hourly rate for overtime hours, for all time spent on call

57.  The Defendants have been fully aware that service on call places severe restrictions on the personal lives of their Maintenance Personnel. The Defendants are aware of the prompt response times that they have required of their Maintenance Personnel and track the number of emergency requests received from tenants at each property, as well as the time spent responding to those requests.

58.  Maintenance personnel are and were on call for the benefit of AIMCO, and the restrictions on the activities in which Maintenance Personnel could be engaged during on-call time are and were for the benefit of AIMCO.

59.  Nonetheless, AIMCO has a corporate policy, implemented statewide, of refusing to pay Maintenance Personnel for the time they spend on call waiting to receive emergency service requests

60.  This compensation policy and practice constitutes a knowing, intentional, and willful violation of the Fair Labor Standards Act.

## CLAIMS FOR RELIEF

WHEREFORE, Plaintiffs respectfully request that the Court:

I.  Determine the damages sustained by the Plaintiffs as a result of the Defendants' willful and intentional violations of 29 U.S.C. § 207(a), and award such back pay against AIMCO and in favor of Plaintiffs plus such pre-judgment interest as may be allowed by law, and

II. Award Plaintiffs their costs and disbursements of this suit, including, without limitation, reasonable attorneys', accountants', investigators', and experts' fees;

and

III. Grant Plaintiffs such other and further relief, including, without limitation, injunctive relief where appropriate, as the Court may deem just and proper or that is allowed under any Federal law violated by the Defendants' conduct described herein.

**PLAINTIFFS DEMAND A TRIAL BY JURY ON ALL CLAIMS SO TRIABLE.**

Submitted by the attorneys for the Plaintiffs

*/s/ Thomas Lacy*

W. Thomas Lacy, Jr. (GA Bar No. 431032)
LACY & SNYDER LLP
300 Prime Point
Suite 100
Peachtree City, GA 30269
Tel : 770-486-8445
Fax: 770-486-8889
tlacy@lacysnyder.com

| | | |
|---|---|---|
| Stephen M. Pavsner<br>Jay P. Holland<br>JOSEPH, GREENWALD<br>& LAAKE, P.A.<br>6404 Ivy Lane, Suite 400<br>Greenbelt, MD 20770<br>Tel.: (301) 220-2200<br>Fax (301) 220-1214 | -and- | Joseph M. Sellers (D.C. Bar No. 318410)<br>Charles E. Tompkins (D.C. Bar No. 459854)<br>Llezlie L Green (D.C. Bar No 484051)<br>COHEN, MILSTEIN, HAUSFELD & TOLL, P L L.C.<br>1100 New York Avenue, N W.<br>West Tower - Suite 500<br>Washington, D.C. 20005<br>Tel.: (202) 408-4600 |

Dated: July 16, 2007